UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EQUIPAV S.A. PAVIMENTAÇÃO,
ENGENHARIA E COMERCIO LTDA.,

                    Petitioner,                        **MEMORANDUM
                                                       OPINION & ORDER**
          -against-
                                                       22 Civ. 4594 (PGG)
SILMAR ROBERTO BERTIN,

                    Respondent.

PAUL G. GARDEPHE, U.S.D.J.:

          Petitioner Equipav S.A. Pavimentação, Engenharia e Comercio Ltda. ("Equipav")

seeks an order confirming a June 3, 2019, arbitration award against Silmar Roberto Bertin and

nonparty Heber Participações SA ("Heber"). Equipav has also moved to confirm an order of

attachment as to Bertin's assets located in this District. Bertin has moved to dismiss for lack of

personal jurisdiction or, in the alternative, for a stay. For the reasons stated below, Equipav's

petition to confirm the arbitration award and motion to confirm the attachment will be granted,

and Bertin's motion to dismiss or for a stay will be denied.

## BACKGROUND

          Equipav is a Brazilian corporation with its principal place of business in São

Paulo, Brazil. (Pet. (Dkt. No. 2) ¶ 1)[1] "It is the successor in interest by merger to Empate

Engenharia e Comércio Ltda." (Id.) Bertin is a Brazilian citizen who "is the beneficial owner of

a Brazilian corporation called Heber Participações SA." (Id. ¶¶ 2-3)

---

[1] Citations to page numbers refer to the pagination generated by this District's Electronic Case
Files ("ECF") system.

In 2006, Empate and Heber, along with other companies, jointly formed Grupo CIBE. (Bertin Decl. (Dkt. No. 41) ¶ 16; Award (Dkt. No. 6-4) ¶ 67) In 2010, Empate and Heber ended their partnership and Group CIBE's assets were divided between the two companies pursuant to the June 15, 2010 Agreement for Restructuring Division of CIBE Assets and Other Covenants. (Restructuring Agreement (Dkt. No. 6-3)) Per the Restructuring Agreement, Heber was obligated to release and replace guarantees made using Group CIBE's assets. (Id. at ¶ 5.2.1) As part of the Restructuring Agreement, Bertin personally guaranteed Heber's debts. (Bertin Decl. (Dkt. No. 49-1) ¶ 19) Heber later breached the Restructuring Agreement by failing to release and replace the guarantees. (Award (Dkt. No. 6-4) ¶ 191) Empate brought an arbitration proceeding against Heber and Bertin, and on June 3, 2019, Empate obtained an arbitration award against Heber and Bertin (the "Award") in Brazil. (Award (Dkt. No. 6-4) ¶¶ 4, 196-97) Neither Heber nor Bertin has paid Empate or its successor, Equipav, in accordance with the Award.[2] (Pet. (Dkt. No. 2) ¶ 22)

On June 3, 2022, pursuant to the New York Convention on Recognition and Enforcement of Foreign Arbitral Awards, Equipav commenced this action petitioning to confirm the Award in the United States. (See id.) That same day, Equipav filed an ex parte application for an order of attachment concerning bank accounts held by Bertin in the United States. (Pet. Attachment App. (Dkt. No. 12)) In support of the Petition, Equipav submitted a declaration from Dr. Avi Yanus, the director of B.C. Strategy UK Ltd., a business intelligence firm also known as Black Cube. (Yanus Decl. (Dkt. No. 7)) In his declaration, Yanus asserts that Bertin has created a complex asset structure that he uses "to conceal his personal assets." (Id. at ¶¶ 27; 30.4)

---

[2] Heber has filed for bankruptcy protection in Brazil. (Pet. (Dkt. No. 2) ¶ 5) "[B]ecause [Bertin] is independently liable for the full Award, [Equipav] is pursuing collection directly from him." (Id.)

On June 6, 2022, this Court denied without prejudice Equipav's application for an order of attachment, finding that Equipav had only addressed the first two of four elements required for the issuance of an order of attachment, had not proffered any undertaking in support of its application, and had not submitted a proposed order of attachment. (June 6, 2022 Order (Dkt. No. 11) at 2-3)

On June 10, 2022, Equipav commenced a judicial proceeding in Brazil to enforce the Award. (Uehbe Decl. (Dkt. No. 52) ¶ 4; Oliveira Decl. (Dkt. No. 49-2) ¶ 2) In those proceedings, Bertin challenged the Award's validity under Brazilian law. (Oliveira Decl. (Dkt. No. 49-2) ¶¶ 8-9)

On June 10, 2022, Equipav also filed a new ex parte application for an order of attachment that remedied the defects cited in this Court's June 6, 2022 order. (Pet. Renewed App. (Dkt. No. 16); Pet. Br. (Dkt. No. 17); Proposed Attachment Order (Dkt. No. 17-1)) On July 14, 2022, this Court granted Equipav's new application and authorized it to serve Bertin by alternative means under Fed. R. Civ. P. 4(f)(3). (Order of Attachment (Dkt. No. 19); Alt. Service Order (Dkt. No. 20)) Equipav served a copy of the order of attachment on eleven financial institutions in this District. (Plochocki Decl. (Dkt. No. 27) ¶ 5)

Petitioner filed an affidavit of service as to Bertin on July 20, 2022. (Dkt. No. 21) On August 4, 2022, Petitioner moved by order to show cause to confirm the order of attachment. (Dkt. Nos. 25-27) On August 10, 2022, counsel for Bertin entered a notice of appearance. (Dkt. No. 28)

In a November 3, 2022 letter to Equipav's counsel, Morgan Stanley reported that it had identified an account containing $12,260.65 that might belong to Bertin. (Morgan Stanley

3

Ltr. (Dkt. No. 45-2))  On November 4, 2022, Petitioner moved by order to show cause to confirm the order of attachment as to Morgan Stanley.  (Dkt. Nos. 44-45)

On November 21, 2022, Bertin moved to dismiss the Petition for lack of personal jurisdiction or, in the alternative, for a stay pending a ruling from the Brazilian court concerning the validity of the Award.  (Resp. Mot. (Dkt. No. 48); Resp. Br. (Dkt. No. 49) at 16-21)

In a June 5, 2023 letter, Equipav reports that the Brazilian court proceedings have concluded and were resolved in its favor, thereby mooting Bertin's motion for a stay.  (June 5, 2023 Pet. Ltr. (Dkt. No. 54) at 1)  Equipav also notes that "[t]here is no automatic stay of the . . . decision; the order was effective immediately."  (Id.)

In a July 12, 2023 letter, however, Bertin asserts that the Brazilian proceedings have not concluded, noting that he has moved for clarification of the Brazilian court's decision. (July 12, 2023 Resp. Ltr. (Dkt. No. 55) at 1)

In an August 25, 2023 letter, Equipav states that the Brazilian court denied Bertin's motion for clarification and that a Brazilian appellate court denied an application to stay the proceedings as Bertin appealed.  (Aug. 25, 2023 Pet. Ltr. (Dkt. No. 56) at 3-4)  In a September 28, 2023 letter, Bertin concedes that the Brazilian trial-level court denied his motion for clarification and that the Brazilian appellate court concluded sua sponte that no stay was appropriate.  (Sept. 28, 2023 Resp. Ltr. (Dkt. No 58) at 1)

In an October 30, 2023 order, this Court directed Bertin to show cause why the order of attachment should not be confirmed.  (Dkt. No. 59)  In a November 9, 2023 letter, Bertin states that he does not oppose confirmation of the order of attachment as it relates to funds held by garnishee Morgan Stanley.  (Nov. 9, 2023 Resp. Ltr. (Dkt. No. 62))

4

## DISCUSSION

## I.   MOTION TO DISMISS CONFIRMATION PROCEEDING FOR LACK OF PERSONAL JURISDICTION

Pursuant to Fed. R. Civ. P. 12(b)(2), Bertin has moved to dismiss the instant confirmation proceeding for lack of personal jurisdiction. Bertin argues that he has not transacted business in New York and that, in any event, his alleged use of a New York bank account is not sufficient for this Court to exercise personal jurisdiction over him. (Resp. Br. (Dkt. No. 49) at 5-10)

### A.   Applicable Law

"The plaintiff bears the burden of establishing that the court has jurisdiction over the defendant when served with a Rule 12(b)(2) motion to dismiss." Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001) (citing Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994)). "When no discovery has taken place, however, a plaintiff need only make a prima facie showing of jurisdiction, which 'entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant.'" George Moundreas & Co SA v. Jinhai Intelligent Mfg. Co Ltd, No. 20 Civ. 2626 (VEC), 2021 WL 168930, at *2 (S.D.N.Y. Jan. 18, 2021) (quoting Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 34–35 (2d Cir. 2010)).

Jurisdictional allegations "are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79–80 (2d Cir. 1993). In considering whether a plaintiff has met its burden, however, courts "'will not draw "argumentative inferences" in the plaintiff's favor. . . .'" Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 59 (2d Cir. 2012) (quoting Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir.1994)). Nor will courts "'accept as true a legal conclusion

5

couched as a factual allegation.'" Id. (quoting Jazini v. Nissan Motor Co., 148 F.3d 181, 185 (2d Cir. 1998)).

Two requirements must be met before a federal court sitting in diversity exercises personal jurisdiction over a defendant.  First, the defendant must be "amenable to process under the law of the forum state." Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. BP Amoco P.L.C., 319 F. Supp. 2d 352, 357 (S.D.N.Y.2004) (citing Omni Capital Int'l Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 105 (1987); Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996)).  Second, the exercise of jurisdiction must comport with due process principles. Id. (citing Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945)).  "Where, as here, the plaintiff[ ] premise[s] [a] theory of personal jurisdiction upon the New York long-arm statute, [courts] first consider whether the requirements of the statute have been satisfied before proceeding to address whether the exercise of jurisdiction would comport with the Due Process Clause." Licci, 673 F.3d at 61.  "Unlike the long-arm statutes of many other states, '[t]he New York long-arm statute does not extend . . . to the constitutional limits.'" Fischer v. Stiglitz, No. 15 Civ. 6266 2016 WL 3223627, at *3 (S.D.N.Y. June 8, 2016) (quoting Licci, 673 F.3d at 60-61).

"In diversity cases arising in this Circuit, personal jurisdiction is determined by the law of the state in which the district court sits, which in this case is New York." DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001) (citing Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F .2d 117, 120 (2d Cir. 1984)).

Civil Practice Law and Rules ("NY CPLR") § 302(a)(1) permits the exercise of specific jurisdiction over any non-domiciliary who personally or through an agent "transacts any business within the state or contracts anywhere to supply goods or services in the state. . . ." NY CPLR § 302(a)(1).  "[I]n determining whether personal jurisdiction may be exercised under

6

section 302(a)(1), 'a court must decide (1) whether the defendant "transacts any business" in New York and, if so, (2) whether th[e] cause of action "aris[es] from" such a business transaction.'" Licci, 673 F.3d at 60 (quoting Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007). "The New York Court of Appeals has explained that 'the overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York.'" Id. (quoting Ehrenfeld v. Bin Mahfouz, 9 N.Y.3d 501, 508 (2007)).

### B.   Analysis

#### 1.   Specific Personal Jurisdiction

Equipav asserts that this Court has specific personal jurisdiction over Bertin because "he has purposefully availed himself of a financial institution within this forum in furtherance of his efforts to conceal assets and avoid his obligations to his creditors." (Pet. (Dkt. No. 2) at 3)  According to Equipav, Bertin has created a "complex asset structure with connections to the US . . . set up to disguise the connection to Mr. Bertin and his activities in Brazil." (Yanus Decl. (Dkt. No. 7) ¶ 30.4)  Bertin allegedly uses two companies that he controls – BSB Participações SA ("BSB Brazil"), a Brazilian company, and Marseg, a Paraguayan company – to circumvent laws that prevent Brazilian citizens from opening U.S. bank accounts. (Id. at ¶ 27.6 , 29-29.2)  Bertin's control over these companies allows him to "regularly conduct transactions through New York." (Id. ¶¶ 27.1-27.3, 29.2-.3)  Indeed, according to Equipav, "Marseg . . . frequently transacts business through New York via correspondent bank accounts." (Pet. (Dkt. No. 2) at 7)

"[T]he use of a New York correspondent bank account, standing alone, may be considered a 'transaction of business' under [New York's] long-arm statute if the defendant's use

7

of the correspondent account was purposeful." <u>Licci ex rel. Licci v. Lebanese Canadian Bank,</u> <u>SAL</u>, 732 F.3d 161, 168 (2d Cir. 2013).  And the "repeated use of a correspondent bank account in New York on behalf of a client [is] – in effect, a 'course of dealing' – [that] show[s] purposeful availment of New York's dependable and transparent banking system, the dollar as a stable and fungible currency, and the predictable jurisdictional and commercial law of New York and the United States."  <u>Id.</u> (quoting <u>Licci</u>, 20 N.Y.3d at 339).

Even assuming that Bertin's use of a correspondent banking account in New York is sufficient to demonstrate the "transaction of business" in this state, however, Equipav has not proffered facts showing any connection between a New York bank account and the claims at issue in the arbitration proceeding, and thus Petitioner's allegations do not provide a basis for the exercise of specific jurisdiction.

The facts were similar in <u>George Moundreas & Co SA v. Jinhai Intelligent Mfg.</u> <u>Co Ltd</u>, No. 20 Civ. 2626 (VEC), 2021 WL 168930 (S.D.N.Y. Jan. 18, 2021).  In that case, petitioner sought

> to confirm and enforce arbitration awards that were issued by a foreign arbitrator in a foreign arbitration.  Am. Petition ¶¶ 13–14, 65.  The underlying contracts at issue involve shipbuilding at a Chinese shipyard.  <u>Id.</u> ¶ 9.  The contracting parties are both foreign companies, incorporated and headquartered outside of the United States.  <u>Id.</u> ¶¶ 4-5.  The Moving Respondents (who were not parties to the arbitration) are foreign companies whose sole contacts with New York are wholly unrelated to the shipbuilding contracts.  <u>Id.</u> ¶¶ 6–8.  Simply put, this case has no connection to New York.  Because Petitioner has failed to allege any connection between the present action and Moving Respondents' New York contacts, there is no basis for long-arm jurisdiction under C.P.L.R. § 302(a).

<u>Id.</u> at *10.

The same is true here.  Bertin is a Brazilian national who lives in Brazil, and the underlying arbitration proceeding took place in Brazil and involves a restructuring agreement and a division of corporate assets that have no connection with Bertin's alleged New York

8

correspondent banking account.  (Garbin Decl. (Dkt. No. 6) ¶ 7; Bertin Decl. (Dkt. No. 49-1) ¶¶

2-3)  Because Bertin's alleged New York correspondent banking account is not alleged to have

any connection with the restructuring agreement and the division of corporate assets, it does not

provide a basis for the exercise of specific jurisdiction.

Equipav contends, however, that "Bertin's asset concealment scheme began in or

around the time of his investment through [BSB Brazil] in Marseg[, and] within the same

timeframe as Bertin's company, Heber, [began] using Empate's assets to make guarantees."

(Pet. Opp. (Dkt. No. 51) at 17)  Equipav argues that "[t]hese events establish a clear relationship

between Bertin's contacts to New York and the underlying dispute in Brazil, and that is all that is

needed."  (Id. at 18)

In support of this argument, Equipav cites Ge Dandong v. Pinnacle Performance

Ltd., 966 F. Supp. 2d 374 (S.D.N.Y. 2013).  In Ge Dandong, plaintiff alleged, inter alia, fraud

and fraudulent inducement related to the sale of notes.  Plaintiff argued that Pinnacle – the

foreign defendant – was subject to New York's long-arm statute "because it opened bank

accounts in New York to deposit the money that it raised from investors and to facilitate its

purchase of subsidiary investments that were used to 'defraud the Pinnacle investors.'"  Id. at

382.  The court found that "Pinnacle 'deliberately used' the New York account 'again and again'

in connection with the design and issuance of the Notes at issue in this case. . . . Indeed, it was

the very transfers into New York that allowed Pinnacle to purchase the Underlying Assets central

to the allegedly fraudulent transactions at issue here."  Id. at 383.

There is no such proof here.  Equipav has not pled facts demonstrating that Bertin

used any New York bank account in connection with the restructuring agreement and division of

corporate assets that were at issue in the arbitration.  And to the extent that Equipav argues that

9

its vague allegations concerning the timing of Bertin's alleged "asset concealment scheme" supports a finding of long-arm jurisdiction under <u>Ge Dangdong</u> (<u>see</u> Pet. Opp. (Dkt. No. 51) at 17), the timing allegations in that case were much more precise. The plaintiff in <u>Ge Dangdong</u> alleged that defendant opened the New York bank account "on the very same day" that the underlying assets were issued. <u>Ge Dandong</u>, 966 F. Supp. at 383. Here, Equipav alleges that Bertin's alleged "asset concealment scheme" began in 2008 – two years before the restructuring agreement at issue. (Yanus Decl. (Dkt. No. 7) ¶ 27.6; Garbin Decl. (Dkt No. 6) ¶ 7)

The connection between the New York bank account and the alleged fraud was also much clearer in <u>Ge Dangdong</u>. In that case, "it was the very transfers into New York that allowed Pinnacle to purchase the Underlying Assets central to the allegedly fraudulent transactions at issue here." <u>Id.</u>; <u>see also</u> <u>Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank</u>, 549 B.R. 56, 69 (S.D.N.Y. 2016) (finding specific jurisdiction where "the receipt of the transferred funds in New York correspondent bank accounts" was "at the heart of this cause of action"). Here, Equipav alleges merely that Bertin used a New York bank account "in furtherance of his efforts to conceal assets and avoid his obligations to his creditors," and to "insulat[e] his wealth from any risk of seizure by local creditors." (Pet. (Dkt. No. 2) ¶¶ 11, 31) These generalized allegations are not sufficient to establish a nexus between Bertin's alleged use of a New York bank account and the subject matter of the arbitration proceeding.

In sum, Equipav has not pled facts demonstrating a connection between any New York bank account and the alleged breach of the restructuring agreement and the corporate assets in dispute. Accordingly, Bertin's alleged use of a New York bank account does not provide a basis for this Court to exercise specific personal jurisdiction over him.

### 2.     Rule 4(k)(2) Jurisdiction

Equipav argues that this Court may exercise specific personal jurisdiction over Bertin pursuant to Federal Rule of Civil Procedure 4(k)(2).  (Pet. Opp. (Dkt. No. 51) at 20-21)  "Rule 4(k)(2) was specifically designed to 'correct[ ] a gap' in the enforcement of federal law in international cases."  Porina v. Marward Shipping Co., 521 F.3d 122, 126 (2d Cir. 2008) (quoting Fed R. Civ. P. 4 advisory committee note, 1993 Amendments).  "Rule 4(k)(2) 'permits federal courts to exercise personal jurisdiction over a defendant that lacks contacts with any single state if the complaint alleges federal claims and the defendant maintains sufficient contacts with the United States as a whole.'"  George Moundreas & Co SA, 2021 WL 168930 at *11 (quoting BMW of N. Am. LLC v. M/V Courage, 254 F. Supp. 3d 591, 598-99 (S.D.N.Y. 2017)).

Under Rule 4(k)(2), a plaintiff can establish personal jurisdiction where (1) the "claim [] arises under federal law"; (2) "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction"; and (3) the exercise of jurisdiction "is consistent with the United States Constitution and laws."  Fed. R. Civ. P. 4(k)(2).  "Because the [P]etition seeking confirmation of the arbitration awards arises under the FAA and the New York Convention, Petitioner has satisfied the initial requirement that the cause of action arise under federal law."  George Moundreas & Co SA, 2021 WL 168930, at *12.  As for the second requirement, Bertin appears to concede that he is not subject to jurisdiction in any state's courts of general jurisdiction.  (Def. Reply (Dkt. No. 50) at 9-11)

As for the third requirement, "the relevant inquiry . . . , for both statutory and constitutional purposes, is whether the Court's exercise of jurisdiction pursuant to Rule 4(k)(2) comports with due process."  In re Aluminum Warehousing Antitrust Litig., No. 13-MD-2481

11

(PAE), 2020 WL 2036716, at \*10 (S.D.N.Y. Apr. 28, 2020). "The constitutional due process inquiry has two steps. The Court must determine, first, whether the defendant has sufficient minimum contacts with the forum, and, if so, second, whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). For purposes of Rule 4(k)(2), "the relevant forum for assessing minimum contacts is the United States as a whole." Id. "For a State to exercise [specific] jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum." Walden v. Fiore, 571 U.S. 277, 284 (2014).

In support of its argument that this Court may exercise jurisdiction over Bertin pursuant to Rule 4(k)(2), Equipav points again "to the scheme to structure [Bertin's] holdings offshore," and to the fact that "Bertin . . . procured a credit card in the United States . . . to enable him to access the benefits of his wealth in Brazil." (Pet. Opp. (Dkt. No. 51) at 21) As discussed above, however, Equipav has not pled factual allegations sufficient to show a connection between Bertin's financial transactions in the United States and the restructuring agreement and corporate assets in dispute. Accordingly, Rule 4(K)(2) does not provide a basis for this Court to exercise specific personal jurisdiction over Bertin.

### 3. Whether Equipav is Entitled to Jurisdictional Discovery

In the alternative, Equipav asks this Court to order jurisdictional discovery, so that it may uncover "additional evidence of a connection between Bertin's anchoring his assets and credit line in the United States and his intent to deprive present or future creditors like Equipav." (Pet. Mem. in Support of Conf. (Dkt. No. 5) at 16) "[W]hether to allow such jurisdictional discovery and, if so to what extent, are matters committed to a trial judge's broad discretion." In

12

re Terrorist Attacks on Sept. 11, 2001, 689 F. Supp. 2d 552, 566 (S.D.N.Y. 2010) (citing

Frontera Res. Azerbaijan Corp. v. State Oil Co. of the Azerbaijan Republic, 582 F.3d 393, 401

(2d Cir.2009)). Jurisdictional "[d]iscovery need not be granted to allow plaintiff to engage in an

unfounded fishing expedition for jurisdictional facts." Langenberg v. Sofair, No. 03 Civ. 8339

(KMK), 2006 WL 2628348, at *6 (S.D.N.Y. Sept. 11, 2006) (quoting Gear, Inc. v. L.A. Gear

Cal., Inc., 637 F. Supp. 1323, 1328 (S.D.N.Y. 1986)).

    Jurisdictional discovery in this case is unlikely to prove fruitful. As an initial

matter, the allegations in the Petition do not suggest a basis for the exercise of specific personal

jurisdiction over Bertin. Moreover, in connection with the Petition, Equipav engaged Black

Cube, which spent at least a year investigating Bertin and his assets. (Yanus Decl. (Dkt No. 7))

Black Cube was "directed to conduct a comprehensive investigation, primarily to trace and

locate assets owned directly by Heber Participações S.A. and Mr. Bertin, providing details of

asset structures belonging to Heber, Mr. Bertin and/or any relevant persons or companies

associated to them." (Id. at ¶ 15) In doing so, Black Cube personnel interviewed – for nearly

twelve hours – individuals familiar with Bertin's assets and financial transactions. (Id. at ¶¶ 19-

25.6) Despite this effort, Equipav did not uncover facts sufficient to provide a basis for this

Court to exercise specific personal jurisdiction over Bertin. Accordingly, authorizing

jurisdictional discovery here runs the risk of initiating "an unfounded fishing expedition."

Langenberg, 2006 WL 2628348, at *6. Equipav's request for jurisdictional discovery will

therefore be denied.

### 4. *Quasi In Rem* **Jurisdiction**

    Equipav argues that this "Court is additionally vested with the authority to

exercise quasi in rem jurisdiction over the assets owned or held by Respondent within this forum

for purposes of this [P]etition." (Pet. (Dkt. No. 2) at 4)  "Quasi in rem jurisdiction is jurisdiction

over designated property that results in a judgment affecting the interests of particular

individuals in designated property."  CME Media Enterprises B.V. v. Zelezny, No. 01 Civ. 1733

(DC), 2001 WL 1035138, at *3 (S.D.N.Y. Sept. 10, 2001) (citing Shaffer v. Heitner, 433 U.S.

186, 199, n. 17 (1977)).  "[T]he mere presence of property is not enough to establish in rem

jurisdiction. . . . Instead, jurisdiction based on property is usually subject to the same minimum

contacts test that is applied to in personam cases as set forth in International Shoe Co. v.

Washington, 326 U.S. 310 (1945).  An exception to this general rule exists, however, where

quasi in rem jurisdiction is used to attach property to collect a debt based on a claim already

adjudicated in a forum where there was personal jurisdiction over the defendant."  Id.

        Here, Equipav has obtained an order of attachment concerning Bertin's assets

located in this District, and Morgan Stanley has identified a bank account in this jurisdiction that

belongs to Bertin.  (Morgan Stanley Letter (Dkt No. 45-2))  "Minimum contacts are not

required" because – as discussed below – Equipav's order of attachment will be confirmed, and

"an arbitration panel with personal jurisdiction over [Bertin] has already adjudicated [Equipav]'s

claims against [Bertin] and determined that he is a debtor of [Equipav]."  CME Media

Enterprises B.V., 2001 WL 1035138, at *3.  As a result, this Court has quasi in rem jurisdiction

over property located in this District, and the motion to dismiss for lack of personal jurisdiction

will be denied to that extent.

## II.    **MOTION FOR A STAY**

        In the event that his motion to dismiss fails, Bertin asks this Court to stay all

proceedings due to ongoing litigation in Brazil.  (Resp. Br. (Dkt. No. 49) at 16)  Pursuant to

Article VI of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards

(the "New York Convention," or the "Convention"), as implemented by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 201 et seq., "[a] court has discretion to adjourn enforcement proceedings where an application has been made in the originating country to have the arbitral award set aside or suspended."[3] Europcar Italia, S.p.A. v. Maiellano Tours, Inc., 156 F.3d 310, 316 (2d Cir. 1998). "A stay of confirmation should not be lightly granted[, however,] lest it encourage abusive tactics by the party that lost in arbitration." Id. at 317. "On the other hand, . . . where a parallel proceeding is ongoing in the originating country and there is a possibility that the award will be set aside, a district court may be acting improvidently by enforcing the award prior to the completion of the foreign proceedings." Id.

The following factors are considered in deciding whether a stay of confirmation proceedings should be granted:

(1) the general objectives of arbitration – the expeditious resolution of disputes and the avoidance of protracted and expensive litigation;

(2) the status of the foreign proceedings and the estimated time for those proceedings to be resolved;

(3) whether the award sought to be enforced will receive greater scrutiny in the foreign proceedings under a less deferential standard of review;

(4) the characteristics of the foreign proceedings including (i) whether they were brought to enforce an award (which would tend to weigh in favor of a stay) or to set the award aside (which would tend to weigh in favor of enforcement); (ii) whether they were initiated before the underlying enforcement proceeding so as to raise concerns of international comity; (iii) whether they were initiated by the party now seeking to enforce the award in federal court; and (iv) whether they were initiated under circumstances indicating an intent to hinder or delay resolution of the dispute;

(5) a balance of the possible hardships to each of the parties, keeping in mind that if enforcement is postponed under Article VI of the Convention, the party seeking

---

[3]  Citing Brazilian law, Equipav contends that "it is not possible for the [arbitration] award to be nullified" or set aside.  (Pet. Opp. (Dkt. No. 51) at 23-24)  But Equipav appears to concede that there are grounds on which Bertin could "oppose the execution of a judicial or arbitral award" in Brazil.  (Uehbe Decl. (Dkt. No. 52) ¶ 17)

> enforcement may receive "suitable security" and that, under Article V of the
> Convention, an award should not be enforced if it is set aside or suspended in the
> originating country . . . . ; and
>
> (6) any other circumstances that could tend to shift the balance in favor of or
> against adjournment.

Iraq Telecom Ltd. v. IBL Bank S.A.L., 597 F. Supp. 3d 657, 667 (S.D.N.Y. 2022), aff'd, No. 22-832, 2023 WL 2961739 (2d Cir. Apr. 17, 2023) (citing Europcar Italia, S.p.A., 156 F.3d at 317-18). "Because the primary goal of the Convention is to facilitate the recognition and enforcement of arbitral awards, the first and second factors on the list should weigh more heavily in the district court's determination." Europcar Italia, S.p.A., 156 F.3d at 318.

Bertin argues that the first and second Europcar factors favor a stay, because Brazilian courts are still considering the validity of the award. (Resp. MTD Br. (Dkt. No. 49) at 16) According to Bertin, a stay would "prevent protracted litigation that would attend this Court enforcing the award while the Brazilian court contemplates its annulment." (Id. at 17) Bertin further notes that "the New York and Brazilian actions were commenced around the same time." (Id. at 18) But the underlying arbitration award was entered in Brazil on June 3, 2019 – more than four years ago (Garbin Decl. (Dkt. No. 6) ¶ 8) – and Bertin appears to have taken no action concerning the Award until Equipav sought to confirm the Award in this District. (Uehbe Decl. (Dkt. No. 52) ¶¶ 3-7) In sum, consideration of the first Europcar factor – promoting the "general objectives of arbitration[, including] the expeditious resolution of disputes and the avoidance of protracted and expensive litigation" – weighs against a stay. Europcar Italia, S.p.A., 156 F.3d at 317.

As to the second Europcar factor – "the status of the foreign proceedings" – Bertin reports that "[o]n September 21, 2022, [he] challenged the validity and enforcement of the arbitral award" in Brazil, (July 12, 2023 Resp. Ltr. (Dkt. No. 55) at 1), but on April 4, 2023, the

16

"Brazilian court issued an order rejecting Bertin's challenge" to the Award. (Id.)  That same month, Bertin "moved the trial court for clarification of that order, but the trial court rejected that motion on August 8, 2023." (Id.; Sept. 28, 2023 Resp. Ltr. (Dkt. No. 58) at 2)  On August 10, 2023, Bertin filed an appeal "seeking to nullify the trial court's decision," (Sept. 28, 2023 Resp. Ltr. (Dkt. No. 58) at 2), but about two weeks later, "one of the three appellate judges issued a sua sponte decision refusing to stay the trial court's decision." (Id.)  In sum, Brazilian courts have rejected Bertin's multiple times, and Bertin "has not provided any reliable estimate, or even any estimate, of how long [his] action to set aside the Award may take." Iraq Telecom Ltd., 597 F. Supp. 3d at 667.  This factor thus weighs in favor of denying a stay.

As to the third factor – the level of scrutiny the Award will receive in Brazil – Bertin notes that "Brazil is the seat of the arbitration, and, therefore the primary jurisdiction, Brazilian courts can apply the specific grounds for refusing to enforce the Award found in Article V of the Convention and can also rely on any pertinent provisions of local law in assessing award validity." (Resp. MTD Br. (Dkt. No. 49) at 19)  This factor is entitled to little weight here, however, because Bertin has not made any showing that he is likely to prevail before the Brazilian court. See Iraq Telecom Ltd., 597 F. Supp. 3d at 667 ("Even on the assumption that [the primary jurisdiction] court will have more leeway to vacate the Award, [respondent] has not shown that that additional authority will be of benefit to it. [Respondent] has not shown that it is likely to succeed on either of the . . . grounds on which it relies in its annulment proceeding.")  Indeed, Bertin lost before the Brazilian trial-level court, and the appellate court has denied a stay.

As to the fourth factor – the circumstances of the foreign proceeding – Equipav filed the parallel enforcement proceeding in Brazil seven days after initiating this instant action.

17

(Pet. (Dkt. No. 2); Uehbe Decl. (Dkt. No. 52) ¶ 4)  There is no issue of international comity, because the instant proceeding was commenced before the Brazilian enforcement proceeding. Moreover, Equipav brought the Brazilian proceeding, and there is no reason to believe that Equipav filed the Brazilian proceeding in order "to hinder or delay resolution of the [parties'] dispute." Europcar Italia, S.p.A., 156 F.3d at 318.  Because Equipav's Brazilian proceeding was brought to enforce the Award, however, this factor weighs in favor of a stay.

The fifth factor – the balance of hardships – weighs in favor of Equipav.  It has been more than four years since the Award was issued, and more than ten months since a Brazilian trial court denied Bertin's challenge to the award.

Finally, a Brazilian appellate court judge denied Bertin a stay of the enforcement proceedings.  (Sept. 28, 2023 Resp. Ltr. (Dkt. No. 58) at 2)  Bertin has offered no reason why this Court should take a contrary position.

Having considered all of the Europcar factors, the Court concludes that they weigh in favor of denying a stay.  Accordingly, Bertin's motion for a stay will be denied.

## III.   MOTION TO CONFIRM ORDER OF ATTACHMENT

Equipav has moved to confirm the ex parte order of attachment previously issued by this Court.  (Order of Attachment (Dkt. No. 19))  See CPLR § 6211(b) (requiring a party that has obtained an ex parte order of attachment to "move . . . for an order confirming the order of attachment").

### A.   Applicable Law

Under Fed. R. Civ. P. 64, "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." See Capital

Ventures Int'l v. Republic of Argentina, 443 F.3d 214, 218-19 (2d Cir. 2006) ("Attachment is available in a federal court, subject to qualifications not applicable here, 'under the circumstances and in the manner provided by the law of the state in which the district court is held.'") (quoting Fed R. Civ. P. 64). "Any debt or property against which a money judgment may be enforced . . . is subject to attachment." CPLR § 6202.

"On a motion for an order . . . to confirm an order of attachment, the plaintiff shall show, by affidavit and such other written evidence as may be submitted, [1] that there is a cause of action, [2] that it is probable that the plaintiff will succeed on the merits, [3] that one or more grounds for attachment provided in section 6201 exist, and [4] that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff." CPLR § 6212(a). "In addition to determining a statutory ground for attachment, a court must evaluate whether attachment 'is needed to secure payment or obtain jurisdiction, and it retains discretion only to the extent that these determinations require weighing of evidence and also in balancing competing considerations.'" BSH Hausgerate, GmbH v. Kamhi, 282 F. Supp. 3d 668, 671 (S.D.N.Y. 2017) (quoting Mishcon de Reya N.Y. LLP v. Grail Semiconductor, Inc., No. 11 Civ. 4971 (RJH), 2011 WL 6957595, at *3 (S.D.N.Y. Dec. 28, 2011)). "When evaluating a motion to confirm an attachment, a district court 'must give the plaintiff the benefit of all the legitimate inferences that can be drawn from the facts pleaded.'" Id. at 672 (quoting Gentile v. Conley, 636 F. Supp. 2d 246, 251 (S.D.N.Y. 2009)).

**B.      Confirmation of an Order of Attachment Under CPLR § 6212(a)**

Bertin "does not oppose entry of an order by the Court confirming the Order of Attachment entered on July 14, 2022, as to funds held by garnishee Morgan Stanley." (Nov. 9,

2023 Resp. Ltr. (Dkt. No. 62))  This Court concludes that Equipav has met each of the requirements for confirmation of the order of attachment.

As to the cause of action requirement for confirmation, that element is met here. Bertin admits that an "arbitration tribunal issued an award in Brazil." (Bertin Decl. (Dkt. No. 49-1) ¶ 19)  Equipav is seeking recognition and enforcement of that foreign arbitral award pursuant to the New York Convention and the Federal Arbitration Act, 9 U.S.C. § 201 et seq.  (Pet. (Dkt. No. 2) at ¶¶ 34-35)  Bertin does not dispute – nor could he – that there is a valid cause of action here.

As discussed below, Equipav's motion to confirm the arbitral award will be granted.  Accordingly, the likelihood of success requirement is satisfied here.

As to the third requirement for confirming an order of attachment, Bertin is a Brazilian national and does not live in New York.  (Bertin Decl. (Dkt. No. 49-1) ¶¶ 2-3, 8)  Bertin's status as "a nondomiciliary residing without the state" satisfies one of the grounds for relief under CPLR § 6201.

As to the fourth requirement, "Respondent has neither argued nor put forward evidence of counterclaims to Petitioner, and Petitioner claims not to be aware of any counterclaims, . . . [so] the amount of the Final Award likely to be recovered by Petitioner from Respondent exceeds the amount of known counterclaims." BSH Hausgerate, GmbH, 282 F. Supp. 3d at 676; see also (Pet. Br. in Supp. of Attachment (Dkt. No. 45) at 17).

Because Equipav has shown "[1] that there is a cause of action, [2] that it is probable that the plaintiff will succeed on the merits, [3] that one or more grounds for attachment provided in section 6201 exist, and [4] that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff" (CPLR § 6212(a)), Equipav has provided "a statutory

ground for attachment." BSH Hausgerate, GmbH, 282 F. Supp. 3d at 671. Before confirming the order of attachment, however, this Court must find that attachment "'is needed to secure payment or obtain jurisdiction. . . .'" Id. (quoting Mishcon de Reya, 2011 WL 6957595, at *3).

Equipav has asserted that there is quasi in rem jurisdiction based on the assets Bertin holds in this District. (Pet. Mem. in Support of Conf. (Dkt. No. 5) at 16-18) In such circumstances, "under New York law, an attachment for purposes of obtaining jurisdiction is valid even absent the need to provide adequate security." Cargill, Inc. v. Sabine Trading & Shipping Co., 756 F.2d 224, 230 (2d Cir. 1985). But even if jurisdiction were not at issue, Equipav has alleged that Bertin has engaged – and continues to engage – in complex financial transactions with the intention of "conceal[ing] his personal assets." (Yanus Decl. (Dkt. No. 7) ¶ 27) Bertin has not disputed Equipav's allegations; instead, he relies on jurisdictional arguments to oppose confirmation of the arbitral award. As such, attachment is also appropriate to ensure that Bertin does not "render [him]self judgment-proof in New York" by transferring his assets out of the jurisdiction. Herzi v. Ateliers De La Haute-Garonne, No. 15 Civ. 7702 (RJS), 2015 WL 8479676, at *3 (S.D.N.Y. Oct. 13, 2015).

For all these reasons, this Court confirms the previously issued order of attachment pursuant to CPLR § 6212(a). But because "the only assets that may be attached are the assets that form the basis for quasi in rem jurisdiction," CME Media Enterprises B.V., 2001 WL 1035138, at *5, this Court's ruling is limited to the $12,620.65 that Equipav has located in this jurisdiction. (See Morgan Stanley Ltr. (Dkt No. 45-2))

## IV.  PETITION TO CONFIRM ARBITRAL AWARD

Equipav has also petitioned to confirm the Award. (Pet. (Dkt. No. 2)) "A petition to confirm an arbitration award rendered in a foreign state is governed by the [New York]

Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21

U.S.T. 2517, 330 U.N.T.S. 53 (the 'Convention'), as implemented by, and reprinted in, the

Federal Arbitration Act ('FAA'), 9 U.S.C. §§ 201-08." Chi Ho Mar. S.A. v. C & Merch. Marine

Co. Ltd, No. 08 Civ. 7997 (WHP), 2010 WL 1253720, at *2 (S.D.N.Y. Mar. 11, 2010) (citing

Compagnie Noga D'Importation et d'Exportation S.A. v. Russian Fed'n, 361 F.3d 676, 683 (2d

Cir. 2006)). "Under the Convention, [a] district court's role in reviewing a foreign arbitral award

is strictly limited" and "the showing required to avoid summary confirmance is high." Yusuf

Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc., 126 F.3d 15, 19, 23 (2d Cir. 1997)

(quoting Ottley v. Schwartzberg, 819 F.2d 373, 376 (2d Cir. 1987)); see also Noga, 361 F.3d at

683 ("'[T]he public policy in favor of international arbitration is strong.'") (quoting Fotochrome,

Inc. v. Copal Co., 517 F.2d 512. 516 (2d Cir. 1975)). "[T]he FAA provides that, upon the

application of a party to an arbitration award made pursuant to the Convention, a district court

shall enter 'an order confirming the award as against any other party to the arbitration,' unless

the court 'finds one of the grounds for refusal or deferral of recognition or enforcement of the

award specified in the . . . Convention.'" Noga, 361 F.3d at 683 (quoting 9 U.S.C. § 207).

   "[A]rbitration awards are not self-enforcing, [and] they must be given force and

effect by being converted to judicial orders by courts; these orders can confirm and/or vacate the

award, either in whole or in part." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 104 (2d Cir.

2006) (internal quotation marks omitted). After reviewing the record, "confirmation of an

arbitration award is [normally] 'a summary proceeding that merely makes what is already a final

arbitration award a judgment of the court.'" D.H. Blair, 462 F.3d at 110 (quoting Florasynth,

Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir. 1984)). Because, "[t]he Convention . . . 9 U.S.C. §§

201 et seq., applies to the Final Award. . . . the Court must confirm the Final Award 'unless it

finds one of the grounds for refusal or deferral of recognition or enforcement of the award

specified in the . . . Convention,' 9 U.S.C. § 207, namely, grounds for vacating, modifying or

correcting the award as provided under 9 U.S.C. §§ 10-11." Mut. Marine Office, Inc. v.

Transfercom Ltd., No. 08 Civ. 10367 (PGG), 2009 WL 1025965, at *2 (S.D.N.Y. Apr. 15, 2009)

(citing 9 U.S.C. § 208 (providing that the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq., will

apply in cases governed by the Convention so long as its provisions are not in conflict with the

Convention)). "Under the terms of § 9 [of the Federal Arbitration Act], a court 'must' confirm

an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in §§ 10 and 11.

Section 10 lists grounds for vacating an award, while § 11 names those for modifying or

correcting one."[4] Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 582 (2008).

      Although this Court has reviewed the Award and is satisfied that reasons for the

Award are explained, "[t]he arbitrator's rationale for an award need not be explained, and the

award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts

of the case." D.H. Blair, 462 F.3d at 110 (internal quotation marks omitted). To confirm an

arbitration award, only "a barely colorable justification for the outcome reached" is necessary.

Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Employees Int'l Union, 954 F.2d 794, 797

(2d Cir. 1992). "It is only when the arbitrator strays from interpretation and application of the

agreement and effectively dispense[s] his own brand of industrial justice that his decision may be

---

[4] "Pursuant to Section 10, this Court may vacate an arbitration award where: (1) the award was
procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption in
the arbitrators; (3) the arbitrators were guilty of misconduct in refusing to postpone the hearing
or refusing to hear evidence pertinent to the controversy, or of any other misbehavior by which
the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers,
or so imperfectly executed them that a mutual, final, and definite award upon the subject matter
submitted was not made." Interdigital Commc'ns Corp. v. Nokia Corp., 407 F. Supp. 2d 522,
528 (S.D.N.Y. 2005) (citing 9 U.S.C. § 10(a)).

unenforceable." <u>Major League Baseball Players Ass'n v. Garvey</u>, 532 U.S. 504, 509 (2001)

(internal quotation marks omitted).

> Pursuant to Clause 12.2 of the Restructuring Agreement, the parties agreed that

> [a]ll disputes that arise among the Parties as a result of this Agreement or
> otherwise related hereto, including regarding its interpretation and effectiveness
> ("Dispute"), shall be definitively resolved by arbitration, as provided for in Law
> No. 9.307/96, according to the Rules of the Center for Arbitration of the Chamber
> of Commerce Brazil-Canada ("Rules") in force at the time of arbitration.

(Restructuring Agreement (Dkt. No. 6-3) ¶ 12.2)  Accordingly, the arbitral tribunal was

empowered to assess what Heber and Bertin owed under the Restructuring Agreement.  After

reviewing the Restructuring Agreement and the evidence presented during the arbitration, the

tribunal determined that Heber was obligated to replace the guarantees made using Grupo

CIBE's assets and that Heber had failed to do so.  (Award (Dkt. No. 6-4) ¶¶ 120-223)  The

arbitral tribunal further determined that Bertin had agreed to guarantee Heber's debts and was

"liable for the fulfillment of obligations and pecuniary liabilities undertaken by HEBER and

Companies from Group Heber."  (<u>Id.</u> ¶ 126)  Given that there is no evidence suggesting

corruption, fraud or other impropriety on the part of the arbitral tribunal, there is no basis for this

Court to deny confirmation of the Award.

> But because this action is based on <u>quasi in rem</u> jurisdiction, this Court may only

confirm the Award in the amount of $12,620.65, representing the amount of Bertin's assets

found in this District.  <u>See</u> <u>CME Media Enterprises B.V.</u>, 2001 WL 1035138, at *4 ("the effect of

a judgment in a <u>quasi in rem</u> case is limited to the property that supports jurisdiction.")

## CONCLUSION

> The Petition to confirm the arbitration award (Dkt. No. 2) is granted as set forth

above.  Bertin's motion to dismiss or for a stay (Dkt. No. 49) is denied.  The July 14, 2022 order

of attachment issued by this Court is confirmed in the amount of $12,620.65, representing the

funds held by garnishee Morgan Stanley.  The Clerk of Court is directed to enter judgment for

Petitioner and to close this case.

Dated: New York, New York
      January 18, 2024

                        SO ORDERED.

                        Paul G. Gardephe
                        United States District Judge